IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCELA OLVERA-MORALES, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:05CV00559 |
| INTERNATIONAL LABOR MANAGEMENT CORPORATION, INC.; NORTH CAROLINA GROWERS ASSOCIATION, INC.; and DEL-AL ASSOCIATES, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

TILLEY, District Judge

     This case arises out of a dispute concerning the recruitment of temporary foreign workers pursuant to the H-2A and H-2B visa guest worker programs. The matter is now before the Court on Plaintiff's Motion for Class Certification [Doc. # 57] and Defendants' Motions for Leave to File a Surreply [Doc. ## 87, 88]. For the reasons set forth below, the Motion for Class Certification is GRANTED and the Motions for Leave to File a Surreply are DENIED.

I.

     The H-2A and H-2B visa guest worker programs provide a legal means by which foreign workers can obtain temporary unskilled employment in the United States. The H-2A program authorizes the seasonal employment of foreign workers

under specified conditions to perform agricultural work, such as planting, weeding, harvesting, and related tasks.  The H-2B program authorizes the employment of foreign workers to perform various non-agricultural work, such as seafood processing, landscape labor, housekeeping, and fishing.

In addition to the differing work assignments, the H-2A and H-2B programs also confer different benefits.  The benefits associated with the H-2A visa include: (1) a guarantee that the worker will receive 75% of the work hours promised; (2) free housing; (3) travel reimbursement; (4) an employment contract; and (5) the Adverse Effect Wage Rate, which insures that the presence of foreign workers does not negatively impact wages paid to the local American workforce.  Under the H-2B visa, on the other hand, workers are guaranteed only that their pay will be consistent with the prevailing wage for the assigned locality.  An H-2B worker must pay for housing and transportation, and has no employment contract or work guarantee.

Defendant International Labor Management Corporation, Inc. ("ILMC") is a North Carolina corporation that assists its clients in locating and processing foreign workers, usually from Mexico, under the H-2A and H-2B programs.  ILMC's clients consist of both agricultural and non-agricultural businesses throughout the United States.  Defendant North Carolina Grower's Association, Inc. ("NCGA") is a non-profit North Carolina corporation that assists North Carolina farm entity members in locating and processing foreign workers solely under the H-2A program.  ILMC and

2

NCGA's visa processing function focuses on the requirements from "the U.S. end." ILMC and NCGA were both founded by C. Stanford Eury and are located in Vass, North Carolina.

Defendant Del-Al Associates, Inc. ("Del-Al") is a Texas corporation located in Charlottesville, Virginia. Del-Al locates Mexican workers for its clients and processes the H-2A and H-2B visa applications from the "Mexican end." Del-Al essentially serves as a liaison between employers or associations in the United States and recruiters in Mexico. Del-Al was founded by Jorge del Alamo and is currently run by his son, Juan del Alamo.

Del-Al has recruited and procured H-2A and H-2B workers on behalf of ILMC and NCGA. Generally, ILMC and NCGA are contacted by its clients/members with requests for a certain number of agricultural or non-agricultural workers. Employer clients/members of ILMC and NCGA would often request that specific workers from the prior season be rehired; these workers are called "preferred workers." After collecting all relevant information from the client/member, ILMC and NCGA would advertise the positions in the applicable area. If the positions remained unfilled, ILMC and NCGA would follow the procedures necessary to obtain foreign workers and engage Del-Al, or another third-party, to locate and recruit the needed workers. Del-Al would pass the relevant information along to recruiters in Mexico, who would attempt to locate and rehire any preferred workers and fill all remaining positions with interested Mexican citizens.

3

Plaintiff Marcela Olvera-Morales, a Mexican citizen who resides in Ecatepac, Mexico, was recruited to work in the United States under the H-2B visa program by agents of Del-Al on behalf of ILMC. Ms. Olvera-Morales was initially assigned to a Michigan vegetable processing company called Veg-Cut on June 20, 1999. In November 1999, she was transferred to an onion farm and onion processing facility in upstate New York, where she worked until she was dismissed in February 2000.[1] Ms. Olvera-Morales was qualified to work in an H-2A position and would have preferred such an assignment because of its preferable benefits. Even though there were men with similar or lesser qualifications that were recruited by Defendants for H-2A positions, Ms. Olvera-Morales was neither offered such a position nor informed that such positions existed.

ILMC has recruited 1,922 women for H-2B positions from 1999 through 2006, which represents 11.3% of the total 17,084 H-2B workers it recruited. By contrast, the 2,084 women recruited for H-2A positions by both ILMC and NCGA represents 2.2% of the total 93,872 H-2A workers they recruited over the same time period. Similarly, between 1999 and 2006, Del-Al has recruited 4,684 women for H-2B positions, which represents 13.9% of the total 33,637 H-2B workers it recruited. The 1,040 women Del-Al recruited for H-2A positions

---

[1] The New York employers consisted of Sterling Onions, Inc., Zappala Farms, LLC, Zappala Holding Company, LLC, Zappala Enterprises, Inc., and James Zappala. Each of these parties were originally named as defendants in this action, but have since been dismissed.

4

represents 2.1% of the total 48,619 H-2A workers it recruited over that period.[2]

Ms. Olvera-Morales initiated this action, on behalf of herself and all others similarly situated, in the United States District Court for the Northern District of New York on December 23, 2002, alleging violations of Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law. [Doc. #1.] She seeks injunctive relief, declaratory relief, compensatory damages, punitive damages, costs, and attorneys' fees. On June 15, 2005, following the dismissal of the New York defendants, the case was transferred to the Middle District of North Carolina. [Doc. #11.] Ms. Olvera-Morales filed a Motion for Class Certification on February 15, 2007. [Doc. # 57.] The proposed class consists of "[a]ll female H-2B workers recruited, procured or referred for employment by the Defendants or their agents, or whose H-2B employment opportunity was procured by Defendants or their agents, from 1999 to the present." At the close of briefing, Defendants filed Motions for Leave to File a Surreply (Doc. ## 87, 88), and Ms. Olvera-Morales has responded in opposition. These matters are now ripe for consideration.

---

[2] Defendants have submitted the affidavit of Dr. Mary Dunn Baker, a labor economist, who concluded that the percentage of Mexican females working in H-2A and H-2B positions reflects the distribution of females working like jobs in Mexico. Ms. Olvera-Morales responded by submitting the affidavit of Dr. David W. Griffin, a labor economist and statistician, who concluded that the relied upon statistics provide strong evidence consistent with the discrimination claim at issue in this case.

II.

Defendants have moved for leave to file a surreply to: (1) respond to Ms. Olvera-Morales' argument that Defendants' brief in opposition to class certification was "replete with misrepresentations of fact and misstatements of law," and created a "legal red herring"; (2) rebut the expert report of Dr. Griffin filed in response to Defendants' expert report; (3) rebut Ms. Olvera-Morales' alleged contention that she was not seeking compensatory damages; and (4) rebut the assertion by attorney Andrew Stillufsen that certain workers recruited by ILMC were mistakenly listed by incorrect names in the list it provided Ms. Olvera-Morales.

Surreplies are generally disfavored, and such a filing is not justified in this case. See Hill-Rom Servs., Inc. v. Versus Tech., Inc., No. 1:03CV1227, 2005 WL 1743917, *1 (M.D.N.C. 2005 July 12, 2005). First, the perceived disparaging remarks in Ms. Olvera-Morales' reply do not warrant leave to file a surreply. To the extent that such comments "cast aspersions on counsel's ethics and professionalism," they have been disregarded by the Court. Second, the statistics relied upon by Ms. Olvera-Morales, which are outlined above, are sufficient to support class certification. The expert statistical analyses submitted by the parties pose factual issues relevant to a review on the merits; they are not determinative as to the propriety of class certification. Third, Ms. Olvera-Morales does not deny requesting compensatory damages. Rather, she clarifies the basis of the damage

6

request and equates it to equitable relief. Finally, the alleged name discrepancy asserted by Mr. Stillufsen has no bearing on the class certification analysis that follows. As such, Defendants' Motions for Leave to File a Surreply are denied.

III.

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Gen. Tele. Co. of Sw. v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 2369 (1982) (quoting California v. Yamasaki, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557-58 (1979)). Federal courts may adjudicate the rights of putative class members only upon certification of that class under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), which involves a two-part inquiry. Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 340 (4th Cir. 2006). A party seeking certification must first demonstrate that he has met the four prerequisites provided in Rule 23(a). If all four prerequisites are met, the moving party also carries the burden to show that the class action is maintainable under at least one of the three categories set forth in Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997).

In determining the propriety of class certification, the Court "must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006). "Such findings can be necessary

7

even if the issues tend to overlap into the merits of the underlying case." Id.; see also Falcon, 457 U.S. at 160, 102 S. Ct. at 2364 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits . . . is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits."). The likelihood of the plaintiff's success on the merits, however, is not relevant to the issue of whether certification is proper. Thorn, 445 F.3d at 319 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53 (1974) and Gariety, 368 F.3d at 366). With these principles in mind, the applicable class certification requirements are addressed, in turn, below.

A.

A party seeking class certification must first establish each of the four prerequisites set out in Rule 23(a). A member of a class may sue as a representative party on behalf of all class members if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party is typical of the claims of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy.

8

1.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) (internal citation omitted). "Impracticable," however, does not mean impossible. Hewlett v. Premier Salons Int'l, Inc., 185 F.R.D. 211, 215 (D. Md. 1997) (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)). A party seeking certification need "show [only] that it is extremely difficult or inconvenient to join all the members of a class." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1762 (3d ed. 2005).

"No consistent standard has been developed for establishing numerosity in class actions." Ballard v. Blue Shield of S. W. Va., Inc., 543 F.2d 1075, 1080 (4th Cir. 1976). Practicability of joinder depends on various factors, such as "the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." Baltimore v. Laborers' Int'l Union of N. Am., No. 93-1810, 1995 WL 578084, at *1 (4th Cir. Oct. 2, 1995); Hewlett, 185 F.R.D. at 215. No specific class size is necessary to maintain a class action. Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984). "Rather, an 'application of the rule is to be considered in light of the particular circumstances of the case.'" Id. (quoting Cypress v.

9

Newport News Gen. & Nonsectarian Hosp. Ass'n, Inc., 375 F.2d 648, 653 (4th Cir.1967)).

In this case, the size of the putative class alone supports a finding that the numerosity prerequisite has been met. "When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder." Hewlett, 185 F.R.D. at 216 (citing Buford v. H&R Block, Inc., 168 F.R.D. 340, 348 (S.D. Ga. 1996)). As outlined above, from 1999 through 2006, Defendants collectively recruited over 6,600 women for H-2B positions, 10 of whom have been located and have submitted supporting declarations.

In addition, other factors also indicate that joinder would be impracticable in this case. First, the identification of all potential class members could pose substantial difficulty. While ILMC has provided Ms. Olvera-Morales with a list of 1,085 female H-2B workers (including addresses) it recruited from 1999 through 2002, there are thousands of yet unidentified members of this prospective class. Second, the likely geographical dispersion of the potential class members throughout both Mexico and the United States (if working pursuant to a temporary visa) would make joinder virtually impossible.

Defendants argue that the "putative class consists of exactly zero plaintiffs and does not even include [Ms. Olvera-Morales]," because they do not "recruit" anyone. To remove any ambiguity, Ms. Olvera-Morales has revised the class definition to include all female H-2B workers that were either "recruited, procured

10

or referred for employment by the Defendants or their agents." Under Title VII, it is "an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(b). "The term 'employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c). Regardless of the label attached to Defendants' role in the recruitment process, it is evident that they regularly procured temporary foreign workers for employers. As previously discussed, the large number of female H-2B workers recruited or procured by Defendants makes joinder impracticable in this case.[3]

In light of the foregoing, Ms. Olvera-Morales has met the Rule 23(a)(1) numerosity prerequisite.

2.

Rule 23(a)(2) requires that there be questions of law or fact common to the

---

[3] Defendants assert in a footnote that this action is subject to dismissal based on Reyes-Gaona v. North Carolina Growers Association, Inc., 250 F.3d 861 (4th Cir. 2001), which held that the Age Discrimination in Employment Act does not apply to foreign nationals when they apply in foreign countries for jobs in the United States. This argument, however, goes to the likelihood of success on the merits and is not relevant to whether class certification is proper. See Thorn, 445 F.3d at 319.

11

class. Fed. R. Civ. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994); see also Central Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992) ("This subsection does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist."). Factual differences among the putative class members' cases will not preclude certification if the class members share the same legal theory. Peoples v. Wendover Funding, Inc., 179 F.R.D. 492, 498 (D. Md. 1998); see also Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir.1984) ("Despite the presence of individual factual questions, the commonality criterion of rule 23(a) is satisfied by the common questions of law presented."). Because the commonality requirement may be satisfied if the putative class shares only a single common question of law or fact, "it is easily met." Baby Neal, 43 F.3d at 56; see also Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 185 (N.D. Ill. 1992) ("[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted.").[4]

Ms. Olvera-Morales contends that the putative class shares the following

---

[4] It should be noted that "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting Amchem Prods., Inc., 521 U.S. at 609, 117 S. Ct. at 2243). Ms. Olvera-Morales seeks to certify this class pursuant to Rules 23(b)(2) and (b)(3).

12

two common questions of law and three common questions of fact: (1) whether Defendants' conduct violated Title VII; (2) whether Defendants' conduct violated the New York Human Rights Law; (3) whether Defendants informed the proposed class members about the existence of or the differences between the H-2A and H-2B visas; (4) whether Defendants offered members of the proposed class H-2A positions; and (5) whether men with qualifications similar to the proposed class members were routinely offered H-2A positions.

Defendants argue that this case relates solely to Ms. Olvera-Morales and that the disparate jobs held by the putative class members defeats commonality. The issue in this case, however, deals with whether Defendants, acting as employment agencies, assigned women to H-2B positions in a discriminatory manner. This issue does not depend on either Ms. Olvera-Morales' unique employment experience or the specific job assignment that the putative class members received under the H-2B visa program. Each of the common questions of law and fact listed by Ms. Olvera-Morales is independently sufficient to clear the "low hurdle" of Rule 23(a)(2). The commonality prerequisite has, therefore, been met.

3.

Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the class. While the commonality requirement focuses on the claims of the class as a whole, the typicality requirement focuses on the named

13

plaintiff's claim.  Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998).  "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so goes the claims of the class.'" Id. (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)). "[T]o establish typicality, the class representatives must show: (1) that their interests are squarely aligned with the interests of the class members; and, (2) that their claims arise from the same events or course of conduct and are premised on the same legal theories as the claims of the class members."  Fisher v. Va. Elec. & Power Co., 217 F.R.D. 201, 212 (E.D. Va. 2003); see also In re Am. Med. Sys., Inc., 75 F.3d at 1082 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.").

In this case, Ms. Olvera-Morales' claims are typical of the claims of the putative class.  Both Ms. Olvera-Morales' claims and the claims of the proposed class members arise out of the same course of conduct (i.e., Defendants' method of recruiting foreign workers under the H-2A and H-2B visa programs).  Further, Ms. Olvera-Morales' allegations that she was not offered an H-2A position despite her qualifications and that men with similar or lesser qualifications were hired for such positions are mirrored by the submitted declarations of the 10 putative class members thus far located.  Accordingly, the Rule 23(a)(3) typicality prerequisite has been met in this case.

14

4.

Under Rule 23(a)(4), a class may be certified only if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." In re Am. Med. Sys., Inc., 75 F.3d at 1083; see also Broussard, 155 F.3d at 338. The adequacy of representation requirement "'tend[s] to merge' with the commonality and typicality criteria," and "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc., 521 U.S. at 625 n.20, 117 S. Ct. at 2250 n.20 (citing Falcon, 457 U.S. at 157-58 n.13, 102 S. Ct. at 2370-71 n.13). It "also factors in competency and conflicts of class counsel." Id. To establish adequacy, "the representative must have common interests with unnamed members of the class" and "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re Am. Med. Sys., Inc., 75 F.3d at 1083 (internal citation omitted). The adequacy of representation requirement "overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." Id.

As discussed above, the commonality and typicality prerequisites have been met. Defendants argue, however, that Ms. Olvera-Morales is an inadequate representative because, as someone who has expressed no interest in returning to

15

work in the United States, she has an inherent conflict of interest with members of the putative class who are either currently working or may desire to continue working under the guest worker visa programs. Regardless of this distinction, the interests of the putative class are sufficiently aligned to insure confidence in Ms. Olvera-Morales' ability to adequately represent its interests. The damages sought in this action apply equally to each putative class member and there is no reason to doubt Ms. Olvera-Morales' desire to protect the class from future harm through equitable relief despite her future employment plans. Cf. Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1235 (9th Cir. 2007) ("It is reasonable that plaintiffs who feel that their rights have been violated by an employer's behavior would want that behavior, and the injustice it perpetuates, to end. In cases involving discrimination, it is especially likely that even those plaintiffs safe from immediate harm will be concerned about protecting those class members that are suffering as they once did."). Moreover, Defendants have not challenged the capabilities or qualification of opposing counsel. As such, the Rule 23(a)(4) adequacy of representation prerequisite has been met.

B.

In addition to demonstrating each of the four prerequisites of Rule 23(a), a party seeking class certification must show that the class can be maintained under one of the three categories in Rule 23(b). Ms. Olvera-Morales seeks class certification pursuant to Rules 23(b)(2) and (b)(3). Under Rule 23(b)(2), a class

16

action is maintainable if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule applies when the putative class seeks injunctive or declaratory relief, and "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Id. advisory committee's note; see also Zimmerman v. Bell, 800 F.2d 386, 389-90 (4th Cir. 1986) (noting "that subsection (b)(2) [is] limited to claims where the relief sought [is] primarily injunctive or declaratory").

Certification under Rule 23(b)(2) remains available, however, when a claim for injunctive or declaratory relief also includes a claim for monetary damages if the requested damages are "incidental" to the requested injunctive or declaratory relief. Lemon v. Int'l Union of Operating Eng'rs, 216 F.3d 577, 581 (7th Cir. 2000) (following Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)); see also Fisher, 217 F.R.D. at 213. Incidental damages are those "'that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'" Lemon, 216 F.3d at 581 (quoting Allison, 151 F.3d at 415); Fisher, 217 F.R.D. at 213. Such damages are distinguishable in that they "do not depend 'in any significant way on the intangible, subjective differences of each class member's circumstances' and do not 'require additional hearings to resolve the disparate merits of each individual's case.'" Id.

17

Rule 23(b)(2) is "particularly suited for class actions alleging [ ] discrimination and seeking a court order putting an end to that discrimination." Thorn, 445 F.3d at 331; see also Amchem Prods., Inc., 521 U.S. at 614, 117 S. Ct. at 2245 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [where class certification is proper under Rule 23(b)(2)]."). "There is no legal presumption, however, in favor of certifying cases alleging discrimination." Thorn, 445 F.3d at 331.

In this case Ms. Olvera-Morales requests: (1) a declaration that Defendants' acts and practices at issue violate the laws of the United States and the State of New York; (2) compensatory damages for back pay based on the difference between the H-2B and H-2A pay levels and in-kind compensation; (3) punitive damages based on Defendants' conduct to the putative class as a whole; (4) costs and attorneys' fees; and (5) injunctive relief enjoining Defendants from further engaging in the acts and practices at issue, directing Defendants to provide equal opportunities to women to work in H-2A positions, and directing Defendants to inform female applicants and workers of their right to non-discriminatory employment in H-2A positions.

Defendants argue that Ms. Olvera-Morales' request for compensatory and punitive damages precludes certification under Rule 23(b)(2) as a matter of law. However, there is no per se rule prohibiting class certification under Rule 23(b)(2) when monetary damages are sought. Thorn, 445 F.3d at 331 (The Fourth Circuit

18

has never held "that monetary relief is fundamentally incompatible with Rule 23(b)(2)"); see also Miller v. Baltimore Gas & Elec. Co., 202 F.R.D. 195, 199 (D. Md. 2001) (discussing relevant cases). Rather, the Fourth Circuit has held "only that relief that is neither injunctive nor declaratory may not predominate over the injunctive and declaratory relief in a proper Rule 23(b)(2) action." Id. (emphasis in original).

The monetary damages requested by Ms. Olvera-Morales do not predominate over the injunctive and declaratory relief sought because they flow directly from the discriminatory recruitment claims that form the basis of the equitable relief. Ms. Olvera-Morales requests compensatory damages in the form of back pay, which "do not predominate over injunctive remedies available because the calculation of back pay generally involves [relatively un]complicated factual determinations and few [ ] individualized issues." Thorn, 445 F.3d at 331-32 (quoting Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 449 (6th Cir. 2002)). Further, because Ms. Olvera-Morales requests punitive damages based on Defendants' conduct to the putative class as a whole, the Court will not be required to delve into "the intangible, subjective differences of each class member's circumstances" and additional hearings will not be required "to resolve the disparate merits of each individual's case." See Allison, 151 F.3d at 415.[5]

---

[5] Punitive damages are available for a Title VII violation when "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the

19

The requested monetary damages, therefore, do not predominate over the requested injunctive and declaratory relief, and certification is proper under Rule 23(b)(2).

Having determined that class certification is proper under Rule 23(b)(2), it is unnecessary to address potential certification under Rule 23(b)(3). "If a class action is maintainable under subsection (b)(2) and also under (b)(3), a court should certify the action under (b)(2), 'so that judgment will have res judicata effect as to all the class.'" Fisher, 217 F.R.D. at 212 (quoting In re A.H. Robins Co., Inc., 880 F.2d 709, 728 (4th 1989)). Unlike an action certified under subsection (b)(3), no member has the right to opt out of an action certified under Rule 23(b)(2). Id.

IV.

For the reasons discussed above, Ms. Olvera-Morales' Motion for Class Certification (Doc. # 57) is GRANTED and Defendants' Motions for Leave to File a Surreply (Doc. ## 87, 88) are DENIED.

This the day of November 7, 2007

    /s/ N. Carlton Tilley, Jr.
United States District Judge

---

federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1) (emphasis added). "The terms 'malice' and 'reckless indifference' refer to 'the employer's knowledge that it may be acting in violation of federal law.'" Golson v. Green Tree Fin. Servicing Corp., 26 Fed. App'x 209, 213 (4th Cir. 2002) (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999)). "Under § 1981a, 'an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law.'" Id. (quoting Kolstad, 527 U.S. at 536).

20