IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARCELA OLVERA-MORALES, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | Civ. Action No. 1:05-cv-559 (NCT-PTS) |
| *Plaintiffs,* | |
| v. | |
| INTERNATIONAL LABOR MANAGEMENT CORPORATION, INC.; NORTH CAROLINA GROWERS' ASSOCIATION, INC., | |
| *Defendants.* | |

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**PRELIMINARY STATEMENT**

The parties respectfully request final approval of the Settlement Agreement and the Addendum to Settlement Agreement ("Agreement") attached as Exhibit 1 to the proposed Order Granting Final Approval Of Class Settlement. The Agreement was preliminarily approved by this Court on October 10, 2008, and it resolves all outstanding claims and meets all the criteria for final approval under federal law.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. Nature of the Case**

This is a class action case on behalf of Mexican women who seek to work in the United States under the federal H-2 visa program, a program that provides a legal means by which foreign workers can obtain temporary unskilled employment in the United States. The H-2

program has two components: H-2A visas for seasonal positions in agriculture, and H-2B visas for temporary positions that are not in agriculture. H-2A workers, but not H-2B workers, are entitled by federal law to a specific set of benefits including free housing, travel cost reimbursement, and a wage rate that often exceeds the prevailing wage.

Current and former defendants are employment agencies who help U.S. employers find workers from Mexico for H-2 jobs in the United States. Plaintiff alleged that these employment agencies reserved H-2A jobs mostly for men and steered women into the less desirable and lower paying H-2B jobs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York Human Rights Law, N.Y. McKinney's Executive Law § 290, *et seq*. Plaintiff sought: (1) injunctive relief directing Defendants to provide equal opportunities to women to work in H-2A positions; (2) back pay for herself and other class members based on the difference between the H-2B and H-2A pay levels; (3) punitive damages; and (4) costs and attorneys' fees.

## II. Plaintiff and Class Representative Marcela Olvera-Morales

Plaintiff Marcela Olvera-Morales is the sole plaintiff and the Class Representative. She is a Mexican national who resides in Mexico. She was recruited in 1999, initially assigned to H-2B work for a Michigan employer in June 1999, and then reassigned in November 1999 to H-2B work for a New York employer where she worked until February 2000.

## III. The Three Current and Former Employment Agency Defendants

Plaintiff's Complaint named as defendants three employment agencies that assist in obtaining H-2A and H-2B workers in Mexico for U.S. employers – the International Labor Management Corporation ("ILMC"), the North Carolina Growers Association ("NCGA"), and Del-Al Associates ("Del-Al").

2

Case 1:05-cv-00559-NCT-PTS   Document 226   Filed 07/10/09   Page 2 of 15

ILMC is a North Carolina corporation that assists its U.S. employer clients to obtain foreign workers, usually from Mexico, for H-2A and H-2B positions. NCGA is a non-profit North Carolina corporation that assists North Carolina farm entity members to obtain foreign workers, usually from Mexico, for H-2A positions. ILMC and NCGA assist their employer members/clients to obtain federal agency approval to hire H-2 workers and, after such approval is received, delegate the actual recruiting of workers to another entity that functions as a visa processing agent in Mexico of ILMC and/or NCGA, such as Del-Al, a Texas corporation. The visa processing agent in turn engages recruiters in Mexico to locate and recruit workers.

### IV. Litigation History

In April 2000, Plaintiff, on behalf of herself and others similarly situated, filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") naming as respondents ILMC and her New York H-2B employers. In March 2002, Plaintiff amended her Charges to also name as respondents NCGA and Del-Al. In September 2002, the EEOC issued a Determination finding reasonable cause to believe that the respondents had violated Title VII, and a Right to Sue letter authorizing Plaintiff and the class she sought to represent to file a lawsuit based on the Charges of Discrimination.

In December 2002, Plaintiff filed the instant case in the United States District Court for the Northern District of New York naming as defendants ILMC, NCGA and Del-Al and the New York entities for whom she had performed H-2B work. The Complaint asserted: (1) class claims under Title VII and under the New York Human Rights Law against ILMC, NCGA, and Del-Al in their employment agency capacity; and (2) an individual claim under Title VII and under the New York Human Rights Law against ILMC, NCGA and the New York entities in their

employer capacity.  Subsequently, the New York employer entities were dismissed by the New York court from the case after Plaintiff reached a settlement of her individual claim against them.

In August 2003, the New York court denied the remaining defendants' motions to dismiss or, in the alternative, for summary judgment.  In April 2006, this case was transferred to this Court in response to a transfer motion by the defendants.

On November 7, 2007, this Court granted Plaintiff's motion for class certification and named Plaintiff as Class Representative.  The Court certified the class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which allows certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole."  The Court defined the class as "all female H-2B workers recruited, procured or referred for employment by the Defendants or their agents, or whose H-2B employment opportunity was procured by Defendants or their agents, from 1999 to the present."

In December 2007, this Court dismissed the state law claims against all three employment agencies, Plaintiff's individual Title VII claim against ILMC as an employer, and the class Title VII claims against ILMC and Del-Al.

In February 2008, this Court granted Plaintiff's reconsideration motion to reinstate the Title VII class claim against ILMC in its employment agency capacity.

In April 2008, this Court granted the NCGA reconsideration motion to dismiss the Title VII claims against NCGA.

As a result of this Court's orders, ILMC is now the sole remaining defendant, and the Title VII class claim against ILMC the sole remaining claim.

4

### V. Settlement Negotiations

Prior to 2008, there were several unsuccessful attempts to negotiate a settlement of Plaintiff's claims.

On March 12, 2008, following separate meetings with the Honorable N. Carlton Tilley, Jr., United States District Judge, to discuss the potential for a settlement, and with a trial date set for April 2008, Class Counsel and Counsel for ILMC met together to attempt to negotiate a settlement after they were advised by Judge Tilley that negotiations might be fruitful. Negotiations continued in the following weeks, and the parties advised Judge Tilley at a May 15, 2008 status conference that they had reached an agreement in principle. The terms of the parties' final agreement are contained in the Agreement and Addendum, attached as Exhibit 1 to the proposed final approval order, and are summarized below.

### VI. Preliminary Approval of Settlement and Implementation of Preliminary Approval of Settlement

On October 10, 2008, this Court issued an order granting both the Joint Motion for Preliminary Approval of Class Settlement and the Joint Motion to Approve Notice to Class and Method for Distributing Notice to Class Members [Doc. # 219]. Pursuant to the order, notice of the settlement was mailed to class members. However, this notice inadvertently and erroneously stated that objections to the proposed settlement must be mailed by May 1, 2008 ("objection date"). Since the intended objection date was May 1, 2009, a Joint Motion to Amend Notice to Class Members was filed on April 3, 2009 proposing that the objection date be extended to June 30, 2009. This Court granted the motion on April 14, 2009 [Doc. # 222]. Class members were mailed a new notice curing the erroneous objection date. *See* Declaration of Christa Geyer.

### VII. Settlement Agreement Addendum

On July 1, 2009 the parties executed an Addendum changing the deadline for Defendants to provide initial monitoring reports to Plaintiff's counsel from January 31, 2009 to January 31, 2010 [NCGA] and from July 31, 2009 to July 31, 2009 [ILMC], and the start year for the agreed upon anti-discrimination training from 2009 to 2010.

## SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides comprehensive anti-discrimination injunctive relief; reporting and monitoring requirements; and $100,000 in monetary relief. Former defendant NCGA would be a party to the agreement subject to the same terms as current defendant ILMC. In return for this relief against ILMC and NCGA, Plaintiff and Class members fully release any sex discrimination claim that was asserted or could have been asserted in this action, including any attorney fee claim.

### I. Injunctive Relief

Hereafter, "Defendants" refers jointly to both ILMC and NCGA. Defendants have agreed to implement comprehensive relief addressing the claims in this action. Every person who recruits workers in Mexico for employment with Defendants' clients or members must provide every prospective worker a written educational statement, attached as Exhibit 1 to the Agreement. Every person or entity who recruits H-2A or H-2B workers in Mexico for employment with Defendants' clients or members must include in any written or oral advertisement for those positions a statement that the positions are open to qualified applicants regardless of gender. Defendants must post the anti-discrimination statement attached as Exhibit 2 to the Agreement at Defendants' headquarters in the United States. For at least the next three years, Defendants must post the anti-discrimination statement attached as Exhibit 3 to the

6

Agreement at the offices of any agent whose services they use in Mexico. For the next three years, Defendants' staff, together with their agents, and their visa processing's recruiters in Mexico shall annually participate in online anti-discrimination training to be provided by a mutually agreed upon online provider and to cover material that is mutually agreed upon by the parties. If a Defendant's client or member requests H-2A or H-2B workers of a specific gender, either directly or indirectly, Defendants shall respond that gender-specific requests are unlawful and will not be accommodated.

## II. Reporting and Monitoring

Defendants have agreed to implement comprehensive reporting and communications provisions for three years that will allow Class Counsel to monitor compliance with the Agreement's substantive provisions.

For three years, beginning in 2010, Defendants shall provide in electronic format to Plaintiff's counsel, in Excel or the equivalent format: for each H-2A and H-2B worker hired by Defendants' members and/or clients, the individual worker identification number, passport number, gender, preferred worker status, and member/client identification number; and for each member/client of Defendants who hired H-2A and H-2B workers, the member/client identification number, location, number of workers requested (including preferred worker status), and position for which hired. Plaintiff's counsel may request underlying documentation for any request for H-2A or H-2B workers placed by Defendants' clients and/or members, up to 10% of the total number of NCGA's members and up to 10% of the total number of ILMC's clients during the calendar year in which the H-2A or H-2B workers worked for the client/member.

Additionally, Plaintiff's Counsel shall be entitled to send a settlement monitoring letter, which they will draft, to the hired H-2A and H-2B workers once each year for a period of three years, which may be used to inquire about compliance with the Agreement's substantive provisions. Defendants shall provide contact information for the workers to a mutually agreed-upon third party administrator, which shall mail the settlement monitoring letter to the hired H-2A and H-2B workers. Defendants will pay for the cost of the mailings.

### III. Monetary Relief

Defendants have jointly agreed to pay $100,000 in settlement funds to be allocated as follows: $12,000 to Plaintiff; $13,000 for litigation costs; and the remainder as a *cy pres* award.

The $12,000 payment to Plaintiff Marcela Olvera-Morales is an incentive award to her as class representative. She has been the sole plaintiff throughout the entire history of this case, and without her initiative and continued efforts the Agreement's comprehensive injunctive class relief could not have been achieved. This Court has specifically approved incentive awards for class representatives, explaining that the "purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *DeLoach v. Philip Morris Companies, Inc.*, 2005 U.S. Dist. LEXIS 13032 at *12 (M.D. N.C. June 29, 2005) (citing *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (approving incentive awards of $ 2,000 to each of five representative plaintiffs); *In re Lease Oil Antitrust Litig. (No. II),* 186 F.R.D. 403, 449 (S.D. Tex. 1999) (allowing awards of between $ 750 and $ 10,000 to class representatives); *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (D.C. Pa. 1985) (allowing award of $ 20,000 to each of two named class representatives)).

The Agreement would provide a $75,000 *cy pres* payment to the Red de Mujeres del Bajio (Network of Women in the Lowlands), a Mexican non-profit organization located in Celaya, Mexico in the state of Guanajuato that provides training and advising to rural women, including education that contributes to the development and empowerment of women and their families. *See* Declaration of Carol Brooke [Doc. #213-2]. *Cy pres* distribution is appropriate when the direct distribution of funds to individual class members would not be economic. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). *See also* 4 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions*, § 11.21, et seq. (4th ed. 2002) (hereafter "*Newberg*") ("In a settlement context, when an aggregate class recovery cannot economically be distributed to individual class members … the parties, subject to court approval, may agree that undistributed funds will be distributed or disposed of for the indirect benefit of the class.") In the instant case, individual distribution to the approximately 2000 class members would not be economic, as the gross amount available per class member is only about $35, and the net individual payment would be significantly less than $35 given the costs of notifying class members and processing their claims.

**CLASS ACTION SETTLEMENT PROCEDURE**

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements. The Rule 23(e) settlement approval procedure describes three distinct steps:

> (1) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;
> (2) Dissemination of mailed and/or published notice of settlement to all affected Class members; and

9

> (3) A final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

These procedures safeguard Class members' procedural due process rights and enable the Court to fulfill its role as the guardian of class interests. *See Newberg* § 11.22, et seq.

This Court took the first step by granting the Joint Motion for Preliminary Approval of Settlement on October 10, 2008. The second step was taken when an amended notice statement was mailed after this Court granted the Joint Motion to Amend Notice to Class Members on April 14, 2009. The final step will occur with the Fairness Hearing on August 4, 2009. With this Motion, the parties request that the Court conclude the settlement approval process and grant final approval of the Agreement.

## ARGUMENT
## FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

While approval of a proposed class action settlement is a matter of discretion for the trial court, when "considering whether to approve a proposed consent decree, a district court should be guided by the general principle that settlements are to be encouraged." *U.S. v. North Carolina*, 180 F.3d. 574, 581 (4th Cir. 1999). This is all the more so in Title VII cases since "[i]n enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981). *Accord*, *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975) ("the clearly expressed intent of [Title VII] to encourage settlements must be borne in mind"). *See also Newberg* § 11.41 (citing cases).

A class action settlement must be both "fair" and "adequate." Fed. R. Civ. P. 23(e). Courts in the Fourth Circuit engage in a bifurcated analysis, separating the inquiry into a settlement's fairness from the inquiry into the settlement's adequacy. *See, e.g.*, *In re*

10

*MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991)). The proposed settlement in this case was reached as a result of good-faith bargaining at arm's length, without collusion.

### I. The Settlement Terms are Fair

In determining whether a proposed settlement is fair, the court should consider: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991); *Flinn,* 528 F.2d at 1173 (Title VII sex discrimination case). The Court considered each of these factors when granting preliminary approval and concluded that "the fairness of the proposed agreement falls within the range of possible approval." Memorandum Order [Doc. # 219] at 3.

Before the settlement was reached, this case was vigorously litigated for six years with multiple contested motions including two series of motions for summary judgment. Plaintiff conducted extensive discovery including multiple interrogatories, multiple notices to produce, and multiple depositions of key defendant staff and key defendant experts. Settlement was reached on the eve of trial only after discovery had been completed, suggesting as the Court noted in its preliminary approval decision "that all parties were able to fairly calculate their chances of success at trial." *Id.* This litigation and discovery gave Plaintiff and Class Counsel an extremely well informed view of the strengths and weaknesses of the case. *See Flinn, id.* ("The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case.")

The settlement negotiations that resulted in the proposed settlement began only on the eve of trial, after Class Counsel and Defendants' Counsel had separately met with Judge Tilley and been advised that settlement negotiations might be fruitful. *See* Declaration of Andrew Davin Stillufsen [Doc. #213-3]. The opinion and recommendation of experienced Class Counsel "should be given weight in evaluating the proposed settlement." *Flinn*, 578 F.2d at 1173. This Court took account when granting preliminary approval of the parties' assertion that the settlement negotiations were non-collusive and that Class Counsel have substantial experience in employment discrimination and in class actions. Memorandum Order [Doc. # 219] at 3. This Court also noted that the waiving of attorneys' fees by Plaintiff's counsel also contributed to the fairness of the proposed settlement. *Id.*

## II. The Settlement Terms are Adequate

In determining whether a proposed settlement is adequate for final approval, the court should consider: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement expressed by class members. *In re Jiffy*, 927 F.2d at 159. This Court found that preliminary approval of the settlement was appropriate in light of the adequacy factors. Memorandum Order [Doc. # 219] at 4.

Though the settlement does not include the back pay relief that Plaintiff had hoped to obtain for class members, it does secure the comprehensive anti-discrimination injunctive relief that has been the primary goal of the litigation. While Plaintiff believes that her class discrimination claim has very substantial merit, she faces substantial legal and factual obstacles

to a favorable litigated judgment, and continued litigation would place at risk the substantial, important injunctive relief that the settlement secures. Finally, given the near certainty that Defendants would appeal any jury verdict against them, this case, which has already been pending since 2002, would likely continue to be litigated at least into 2010 and perhaps beyond that if the settlement is not approved.

NCGA and ILMC both vigorously dispute the allegation that they discriminate against women, and proffer direct, statistical and expert testimony in support of their position. It is possible that the trier of fact might find in their favor. NCGA and ILMC also vigorously advance colorable legal arguments that Title VII does not apply at all to the circumstances of this case. While this Court has rejected those arguments, Defendants would surely raise them on appeal if Plaintiff prevailed at trial, and it is possible that the Fourth Circuit might agree with their position. This Court acknowledged both of these potential litigation outcomes as reasons for granting preliminary approval of the agreement. *Id.* at 5.

With respect to NCGA, there is also the fact that this Court has dismissed NCGA from the case. In order to obtain relief by litigation against NCGA, Plaintiff would first have to successfully appeal the dismissal, then prevail at trial, and then successfully defend the favorable verdict on appeal should NCGA appeal it. In its preliminary approval decision, this Court found that NCGA's inclusion as a party to the Agreement despite being dismissed as a defendant lent considerable weight to the adequacy of the settlement. *Id.*

Plaintiff has not been presented with any evidence that either Defendant could not pay the cost of a litigated back pay judgment, and Defendants' potential insolvency was not a factor that Plaintiff or Class Counsel considered. However, Defendants' counsel has expressed the concern that any substantial monetary judgment against either entity could lead to the entity's insolvency.

13

Finally, the lack of objections from class members supports the adequacy of the settlement "because the reaction of the class is perhaps the most significant factor to be weighed in considering its adequacy." *In re MicroStrategy, Inc. Sec. Litig*, 148 F. Supp. 2d at 668 (citing *Sala v. National R.R. Passenger Corp.,* 721 F. Supp. 80, 83 (E.D. Pa. 1989)). Notice was sent to [ ] persons. *See* Affidavit of [defendants]. Four responses were received. *See* Affidavit of Carol Brooke. Three responses indicated that class members explicitly accepted the settlement terms. One response indicated the while the class member accepted the settlement, she was dissatisfied about the limited length of her employment, which is not at issue in this litigation. No class members filed objections by the designated objection date of June 30, 2009. Since no objections were filed, the class' response supports the settlement. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d at 668 (citing *Strang v. JHM Mortgage Sec. L.P.,* 890 F. Supp. 499, 502 (E.D. Va. 1995)(stating that class members support a settlement when objections are not filed)).

## CONCLUSION

For the reasons stated above, the Joint Motion For Final Approval Of Class Action Settlement should be granted.

Dated July 10, 2009

Respectfully submitted,

s/*Andrew Davin Stillufsen*
Andrew K. Solow
Andrew D. Stillufsen
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022
(212) 836-7366
(212) 836-6304 (fax)
Email: astillufsen@kayescholer.com

Carol L. Brooke

14

Carlene McNulty
North Carolina Justice Center
P.O. Box 28068
Raleigh, NC  27611
(919) 856-2144
(919) 856-2175 (fax)
carol@ncjustice.org
N.C. Bar #29126
Local Counsel for Plaintiff

Timothy Casey
Naveen Kabir
Legal Momentum
395 Hudson Street, 5th floor
New York, NY  10014

Counsel for Plaintiff Class

s/W.R.Loftis, Jr.
W.R. Loftis, Jr.
N.C. State Bar # 2774
Robin Shea
Constangy, Brooks & Smith, LLC
100 N. Cherry St., Suite 300
Winston-Salem, NC 27101
(336) 721-1001
Counsel for Defendants